United States District Court
Southern District of Texas
**ENTERED**
April 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BONNIE FAYE PETTIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-04206 |
| | § | |
| PHH MORTGAGE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Before the Court are cross-motions for summary judgment filed by the plaintiff, Bonnie Faye Pettis, (Dkt. No. 13), and the defendant, PHH Mortgage Corporation (Dkt. No. 23). The defendant has filed a response to the plaintiff's motion, (Dkt. No. 16), but the plaintiff has not filed a response to the defendant's motion. After reviewing the motions, the pleadings, the record, and the applicable law, the Court determines that the plaintiff's motion should be **DENIED** and the defendant's motion should be **GRANTED**.

**II.   FACTUAL BACKGROUND**

This dispute centers on a loan modification. In 2007, the plaintiff and her son, Charles Pettis, took out a mortgage loan of $121,128 with GMAC Mortgage, LLC for their primary residence at 18514 Desert Marigold Drive, Houston, Texas 77073 ("18514 Desert Marigold"). Both the plaintiff and her son are on the title. As will become relevant later, the plaintiff and her son were also both single at the time. Eventually, the defendant, PHH MC, came to own and service the loan. When the plaintiff experienced financial hardship in 2016, they modified the loan for the

first time. At that time, the plaintiff and her son both reported that they were single and living at 18514 Desert Marigold.

### *The 2020 Loan Modification*

In 2019, the plaintiff became delinquent and did not make her March, April, May, or June payments. That June, the plaintiff and defendant began discussing a new loan modification. That modification forms the basis of this lawsuit. The parties dispute whether the defendant told the plaintiff to stop making payments until she was approved for the modification—specifically, that she intentionally miss the June-August 2019 payments. Regardless, the defendant informed the plaintiff that: "In order to avoid the negative impact to your credit rating resulting from late payments and to avoid foreclosure, it is important that you continue to make your mortgage payment by its scheduled due date each month." On July 23, the defendant approved the plaintiff for a three-month Trial Period Plan.

The acceptance letter informed the plaintiff that completing the Trial Period Plan would make her eligible for—but would not guarantee—a permanent modification. The Trial Period Plan terms also stated that the defendant would continue to report that the plaintiff's account was past due to credit reporting agencies, and that the defendant may require receipt of clear title for final approval. Additionally, the terms warned that "Your credit score may be adversely affected by accepting a trial period plan." The plaintiff and her son signed and returned the Acceptance of Trial Period Plan Terms on July 31, 2019.

### *The Marital Status Affidavit and Brittany Pettis*

In October, the defendant informed the plaintiff that the title search yielded an issue. It is not clear what the search showed, but the defendant cited Texas' homestead rules requiring spouses to sign loan modification agreements that are secured by that spouse's residence. Consequently,

the defendant sent the plaintiff and her son, Charles, a Marital Status Affidavit. They both reported that 18514 Desert Marigold was their homestead, but Charles also reported that he married his wife, Brittany Pettis, on November 18, 2018. It later became known that the plaintiff instructed her other son—not Charles—to complete Charles' affidavit. The parties dispute whether the defendant instructed the plaintiff and her son on how to complete the Marital Status Affidavits.

Regardless, the defendant told the plaintiff that she was eligible for a second loan modification, with a January 27, 2020 deadline to return the agreement. The defendant's "relationship manager," Nikki Pascua, told the plaintiff that failure to complete the modification may lead to adverse reporting. The loan modification agreement identified the plaintiff and Charles as the borrowers, and Brittany Pettis as a "Non-Obligor (contributor)." However, the line for Brittany's signature did not immediately indicate her non-obligor status, and the signature page is labeled the "Borrower Acknowledgement." The plaintiff asked the defendant to remove Brittany's signature line from the agreement because neither Brittany nor Charles lived at the property at that time. The plaintiff was concerned that including Brittany in the agreement would grant Brittany rights in 18514 Desert Marigold. The defendant's representative told the plaintiff that if Brittany was not on the property's title, she would be removed from the agreement and the plaintiff would be sent updated documents. Brittany is not on 18514 Desert Marigold's title.

The defendant later informed the plaintiff that Brittany's signature was necessary because Charles' Marital Status Affidavit declared that he was married to Brittany and lived at 18514 Desert Marigold. The plaintiff contests this, alleging that she was told this only in October of 2022 at the defendant's corporate representative's deposition. However, a recording of a telephone conversation between the plaintiff and the defendant's representative dated March 3, 2020 shows that the defendant explained the issue to the plaintiff and asked her to send in a new Marital Status

Affidavit for Charles. The plaintiff did not submit a new Marital Status Affidavit for Charles, but she did include a custom affidavit signed by Charles stating that Charles did not live at 18514 Desert Marigold. It did not mention Brittany or Charles' current homestead address, or for how long Charles had lived at 18514 Desert Marigold, as the defendant's Marital Status Affidavit form required.

Without a corrected Marital Status Affidavit, the defendant decided not to remove Brittany from the 2020 Loan Modification Agreement. After the plaintiff did not submit the agreement, the defendant informed her that she was no longer eligible for a permanent loan modification, but she could reapply. When the plaintiff did not reapply by April of 2020, the defendant sent her a notice of default. The notice stated that payments were past due for seven months: October 2019 to April 2020.

*The Suspense Account and Monthly Statements*

The plaintiff made several partial payments during the application process. These were supposed to be "not applied to [her] mortgage, but instead . . . held in a separate suspense account. If [the plaintiff] pay[s] the balance of a partial payment, the funds will then be applied to [her] mortgage." From August 30, 2019 to February 13, 2020, the plaintiff paid the defendant $977.15; on March 12, $966.82; on April 9, $988.35; and on May 7, $1,063.96. These payments were placed in a suspense account, where the plaintiff argues they were not credited to the earliest delinquent payment as they should have been. The plaintiff's credit report showed missing payments from August of 2019 to April of 2020.

### III.    CONTENTIONS OF THE PARTIES

*The Plaintiff's Summary Judgment Motion*

The plaintiff contends that the defendant committed fraud by nondisclosure, fraudulent inducement, negligent misrepresentation, and violated TEX. FIN. CODE § 392.304, the Texas Debt Collection Act ("the TDCA").

First, the plaintiff alleges at least 12 ways the defendant committed fraud by nondisclosure, including: failing to disclose that the plaintiff's payments under the trial program would not be reported to a credit bureau; providing false information regarding the marital status affidavit; providing false information regarding the requirement of a third party to secure the loan modification; failure to communicate; failure to disclose that the process may result in the change of title of the real property; and failure to report payments to a credit bureau. The plaintiff alleges that, had she not relied on the defendant's misrepresentations, she would have "attempted to mitigate her damages arising from her default rather than participate in [the loan modification] process."

Second, the plaintiff alleges that she was fraudulently induced to enter the loan assistance program for the same 12 reasons stated above. The plaintiff also argues that the defendant's representations that Brittany Pettis was on the property's title, that she would be removed from the loan modification agreement, and that corrected documents would be forwarded to the plaintiff, were all false and misled her into the trial program.

Third, the plaintiff alleges that the defendant's representation that the plaintiff needed to be three months behind in payments to qualify for assistance led the plaintiff to fall five to six months behind. The plaintiff also alleges that not informing the plaintiff that her payments would not be reported on her statement or to a credit bureau harmed her. Additionally, the plaintiff alleges

that she suffered pecuniary loss from the defendant's representative telling her that she would have Brittany Pettis' name removed from the 2020 Loan Modification Agreement.

Fourth, the plaintiff alleges that the same behavior detailed above violates §§ 392.304(a)(8) & (a)(19) of the Texas Debt Collection Act because the defendant is a debt collector and the debt at issue is a consumer debt.

The plaintiff moves for summary judgment, presumably on all claims.

*The Defendant's Summary Judgment Motion*

The defendant contends that it, too, is entitled to summary judgment on all claims. First, the defendant argues that because the underlying loan exceeds $50,000, the Statute of Frauds bars the plaintiff's claims based upon oral representations from the defendant. Second, the defendant asserts that the economic loss rule also bars the plaintiff's claims, since any duty or injury relates to the parties' contractual relationship. Third, the defendant argues that the plaintiff's fraud claims fail, both because the defendant did not breach a legal duty and because the plaintiff did not rely upon the defendant's representations to her detriment. Fourth, the same reasons doom the plaintiff's negligent misrepresentation claims. Fifth, the Fifth Circuit has held that discussions regarding loan modifications are outside the ambit of the TDCA. Finally, the defendant emphasizes that it is permitted to include modification terms it deems necessary.

## IV.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to meet its burden to show the existence of an essential element of its case. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). When determining whether a genuine issue of material fact exists, the court must construe "all facts and inferences . . . in the light most favorable to the nonmoving party." *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the movant meets its burden, the burden shifts to the nonmovant to "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003).

The parties' cross-motions do not change the summary judgment analysis. The court examines each party's motion independently, construing the evidence and inferences in the light most favorable to the nonmoving party. *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). Each party may move for summary judgment using different legal theories that rely upon different sets of material facts. *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, "[c]ross-motions for summary judgment will not, in themselves, warrant the Court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

## V. ANALYSIS & DISCUSSION

*Fraud by Non-Disclosure*

Fraud by non-disclosure occurs when: a) a party conceals or fails to disclose a material fact within the knowledge of that party; b) the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; c) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and d) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001).

Although the plaintiff lists 12 ways the defendant committed fraud by non-disclosure, only four actually allege a failure to disclose information: 1) that the plaintiff's payments would not be reported to any credit bureau; 2) that a third party may be required for the modification; 3) that the reason Brittany Pettis was involved was because of Charles' Marital Status Affidavit; 4) and that the modification process may alter 18514 Desert Marigold's title.

The facts indicate that the defendant is entitled to summary judgment. First, the Trial Period Plan Terms notified the plaintiff that the defendant would continue to report that the plaintiff's account was past due until the loan was brought current. Second, the defendant notified the plaintiff that title may need to be cleared and that she may need to submit additional documents. The defendant explained to the plaintiff during their March of 2022 telephone conversation that the incorrect information on Charles' Marital Status Affidavit was the reason for including Brittany Pettis in the process. Third, even if the defendant at one point told the plaintiff that the reason for including Brittany Pettis was because of the title rather than the affidavit, the plaintiff has shown neither how that information was material nor how it harmed her. Fourth, the plaintiff has offered

no evidence that the modification would change the property's title or ownership; the agreement merely asked Brittany Pettis to sign as a non-obligor.

Indeed, it is not clear how the plaintiff suffered any injury as a result of acting on any information the defendant did or did not give. The plaintiff admits that "Plaintiff pecuniary loss was the loss of modification agreement . . . The loss of the benefit of the bargain, here the loan modification, is a loss of benefit." But this pulls back the mask of fraud claims to reveal a breach of contract claim in disguise. Alternatively, vague allegations that the plaintiff otherwise would have "attempted to mitigate her damages" when she was already behind on her payments do not rise to the level of harmful reliance. The plaintiff would have faced the same problem of delinquency either way. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011) ("A plaintiff seeking to prevail on a fraud claim must prove . . . the plaintiff suffered an injury by actively and justifiably relying on that representation."). And even if the plaintiff had relied to her detriment upon the defendant's representations, "reliance on oral representations by customer service representatives that were contradicted by the terms of the loan agreement and the notice of foreclosure are not reasonable as a matter of law." *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 330 (5th Cir. 2013).

*Fraudulent Inducement*

The claim that the defendant fraudulently induced the plaintiff to enter the defendant's loan assistance program also fails. Fundamentally, the plaintiff's timeline is backward. The actions that induce the plaintiff into the contract must *precede* the contract's formation. Here, the plaintiff entered the contract *before* the alleged inducement: the assurance that "(i) Brittany Pettis was on title, (ii) Brittany Pettis – if not on title – would be removed from the proposed loan modification and (iii) that corrected documents would be forwarded to Plaintiff – all which were false."

Logically, the plaintiff could not have been induced into the assistance program by actions the defendant took only after the plaintiff enrolled in the agreement. "Certainly there can be no [fraudulent inducement] when one is not induced into a contract." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

*Negligent Misrepresentation*

The tort of negligent misrepresentation requires that: 1) [T]he representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, 2) the defendant supplies "'false information'" for the guidance of others in their business, 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and 4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 242 (5th Cir. 2014) (citing *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC,* 324 S.W.3d 840, 850 (Tex. App.–Houston [14th Dist.] 2010, no pet.)).

First, several of the plaintiff's negligent misrepresentation claims are holdovers from her claims of a failure to disclose. The Court therefore applies its earlier analysis and conclusions to these repeated claims. Second, the plaintiff's motion undercuts itself. The plaintiff complains that "the Defendant represented that Plaintiff needed to be 3 months behind in payments [to qualify for assistance]," and that this representation "resulted in Plaintiff being 5-6 months behind." But elsewhere in the same motion, the plaintiff writes "[c]learly, Plaintiff was required to be 3 months, not 5 or 6 months in arrears [to qualify for assistance.]" The defendant cannot be liable for a misrepresentation that the plaintiff herself acknowledges is "clearly" *not* a misrepresentation at all.

Furthermore, the Statute of Frauds bars claims regarding Brittany Pettis and the Marriage Status Affidavits. "An agreement regarding the transfer of the property or modification of a loan

must . . . be in writing to be valid." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013). The plaintiff's summary judgment motion admits that "Defendant PHH Mortgage did not put in writing that it instructed Plaintiff not to make payment until she was approved for the program." And the Fifth Circuit has held that a "negligent misrepresentation claim 'may not be used to circumvent the Statute of Frauds.'" *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 837 (5th Cir. 2014) (citing *Lam v. Nguyen,* 335 S.W.3d 786, 790 (Tex. App.—Dallas 2011)).

Finally, the defendant's representations that Brittany Pettis would be removed from the modification agreement and that the defendant would correct the error were promises of future action. "Under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 205 (5th Cir. 2012).

*Texas Debt Collection Act Violations*

A. *§ 392.304(a)(8)*

The Texas Debt Collection Act ("TDCA") prohibits "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). The plaintiff focuses on the defendant's alleged misrepresentation that it would modify the plaintiff's loan if Brittany Pettis was not on the title. But this does not bear upon the debt's character, extent, or amount. Indeed, the fact that a mortgage company "promised to send [a plaintiff] a loan modification application" is not a claim upon which relief may be granted under § 392.304(a)(8*). Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013).

The plaintiff also alleges inaccuracies in her monthly statements, which may fall under § 392.304(a)(8). The plaintiff's evidence for these inaccuracies is a letter from the defendant to the plaintiff dated May 14, 2020. The plaintiff argues that the letter shows that the plaintiff's "suspense account contained, at a minimum, $3,882.88 on April 20, 2020, [and] it is uncontroverted that the amount was not applied to Plaintiff's arears, as required." But that very letter controverts the plaintiff's claim. The letter shows three things: 1) that each payment received from August, 29, 2019-March 13, 2020 was applied to a suspense account and then reversed and applied to the earliest delinquent months, from March 1, 2019-September 1, 2019; 2) that on April 9, a payment of $966.86 was not processed; and 3) that funds of $3,882.88 in the suspense account were reversed and applied to the June, 2019 to September, 2019 payments. That left the account past due since October 1, 2019, seven months behind schedule.

The refusal to process the $966.86 payment and the payment returns both comport with the defendant's communications. Under "Important Messages," the plaintiff's April 20, 2020 monthly mortgage statement warns that the plaintiff's payment was "not the payoff quote and any amount less than the payoff quote will be returned." Because the plaintiff has not paid the quote, these claims fail.

B. *§ 392.304(a)(19)*

The plaintiff also invokes § 392.304(a)(19), which prohibits "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(19). But "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its *modification* and thus they do not state a claim under Section 392.304(a)(19)." *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (explaining that, in a similar case to this one, "we have previously

rejected TDCA claims arising from similar facts: a protracted process of applying for modification that ends in foreclosure."). Accordingly, the plaintiff's claims under the TDCA fail.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the plaintiff's motion for summary judgment is hereby **DENIED**. The defendant's motion for summary judgment is **GRANTED.**

IT IS SO **ORDERED**.

SIGNED on April 27, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge